# In re Saw-mill Run Bridge.
## Ballentine's Appeal.

1. Legislation which provides for the fair and equal assessment of properties peculiarly benefited by a local improvement, in order to pay its cost, will be sustained as a legitimate and constitutional exercise of legislative powers, but not where such an assessment, from the character of the improvement, is impossible.

2. A bridge crossing a stream at a public highway in a city is a public, not a local, improvement, and the cost of its construction must be borne by the general public and not assessed upon individual property.

3. Per WOODWARD, J.—At the very utmost, in the case of an improvement whose public object and character are palpable, assessment of individual property to meet its cost would be justified only by affirmative and distinct proof appearing on the record of individual benefits actually conferred, and of their nature, extent and value.

4. Undecided whether the provision of the Act of 1871 warrants the removal of any existing bridge and building of another at private cost, at the option of city councils.

[In re Saw-mill Run Bridge.]

October 4th 1877.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Certiorari *sur* appeal to the Quarter Sessions of *Allegheny county*: Of October and November Term 1876, No. 19.

Appeal from an order of court confirming the report of viewers appointed to assess upon the property of certain citizens of the city of Pittsburgh the cost of the construction of a bridge in said city.

The evidence produced before a commissioner disclosed these facts.   That in 1871 the Pittsburgh and Noblestown Plank-road run through the borough of Temperanceville, at which point was a wooden bridge crossing Saw-mill Run.   In 1872 the borough purchased that part of the plank-road within its limit for the sum of $2000, converting the road into a street, which was paved and graded, and leaving the old bridge remain.   In the year 1872, the borough was consolidated with the city of Pittsburgh, and in December of that year the councils of said city passed an ordinance authorizing the construction of a new bridge of iron over said Saw-mill Run, and directing that the cost of the same should be assessed and collected in accordance with the provisions of the Act of January 6th 1864, Pamph. L. 1131, and its supplements. In pursuance of this ordinance the old bridge was torn down and a new one erected in its stead, and on the 15th of June 1874, the viewers appointed to assess the cost upon the various properties in the neighborhood made their report to city councils.   Upon the petition of certain citizens this report was ordered to be returned to court, and the court referred the same back to the viewers, who, on November 9th 1874 filed a second report, wherein they found the cost of the bridge and assessed the same in the manner described in the opinion of this court, wherein will also be found in substance the provisions of the acts under which the assessments were made.

Exceptions were filed to this report by a number of citizens upon various grounds, among which were the following: 1. That there is no authority of law to assess local benefits on property of petitioners, because the same cannot be benefited by the bridge in the same manner as properties are benefited by sewers, and therefore any standard of assessment for local benefits would be illegal and imaginary, and can be estimated by no actual standard of benefits, as in the case of sewers.

2. That the assessment of the cost of the bridge locally upon properties is without authority of law, for the benefits to the properties of petitioners are only the same as those which will accrue to the properties of the public generally, and of the property-holders within the city of Pittsburgh, and the cost, therefore, should be collected by a general, uniform tax throughout the city.

3. That the assessment was illegal, as the building of the bridge was not properly a construction within the meaning of the Act of 1871, Pamph. L. 1236, a supplement to the Act of 1864,

but was only a necessary repair upon a public highway long since established and in public use.

These exceptions were overruled by the court, and the report confirmed, and the exceptants took this appeal, assigning this action of the court for error.

*R. & S. Woods* and *T. H. Baird Patterson*, for appellants.— By the Act of Consolidation the city assumed the ownership of said bridge, with all its liabilities, and was bound generally, as a municipality, to provide for all the expenses of repair or reconstruction : Hammett *v.* Philadelphia, 15 P. F. Smith 156.

The Act of 1871 confers authority only in cases of original construction of bridges, and not in cases of repair or reconstruction.

Local assessments can only be constitutional when imposed to pay for local improvements, clearly conferring special benefits on the properties assessed, and to the extent of those benefits. They cannot be imposed when the improvement is either expressed or appears to be for general benefit : In re Washington Avenue, 19 P. F. Smith 352. The assessments in this case are illegal, because there is no standard by which special benefits can be clearly conferred, or by which the extent of those benefits can be limited or ascertained, and therefore the whole of the special or local benefits attempted to be assessed here are without legal foundation, resting only on the imagination or guess of the viewers : In re Washington Avenue, *supra;* Hammett *v.* Philadelphia, *supra;* Constitution of Pennsylvania, art. 9, sect. 1.

*Thomas S. Bigelow*, City Solicitor, and *M. W. Acheson*, for the city.—The power of the legislature to direct the assessment of the cost of a bridge, or other local improvement, upon the properties benefited thereby, upon a special inquiry into the fact of such benefit by a board of viewers, has been so long regarded as a proper exercise of the taxing power as to forbid discussion. Since the question was first raised in McMasters *v.* The Commonwealth, 3 Watts 292, this court has never swerved from the conclusions of that case upon this subject.

This case is not within the principle of Hammett *v.* The City of Philadelphia, because there was no improvement of the public highway, as such, at the expense of properties benefited previous to the construction of the bridge in controversy. The purchase from the Plank-road Company was merely an extinguishment of an easement, and had the road thus relieved not acquired, by long use, the character of a public highway, the ground occupied as the right of way by the Plank-road Company would have reverted to the properties on either side thereof.

Mr. Justice WOODWARD delivered the opinion of the court, January 7th 1878.

[In re Saw-mill Run Bridge.]

General provisions " concerning streets and sewers in the city of Pittsburgh," were contained in an Act of Assembly passed in the session of 1863, and approved on the 6th of January 1864 (Pamph. L. of 1864, 1131). The first three sections regulated the mode by which streets, lanes and alleys should be laid out, opened, widened, straightened and extended. All discretion and authority to determine upon the propriety of the steps to be taken were vested in the city councils. Three discreet citizens were to be appointed by them, by ordinance, as viewers to fix the location, breadth and length of any highway to be laid out or changed. These viewers were required to make " a true and conscionable appraisement of the damages" any owner or owners would " be likely to sustain by reason of the proposed improvement; and to assess the same equitably, justly and without partiality upon the properties" that might ·be, and would be likely to be benefited.' By the sixth section power was given to the councils to pave, re-pave, grade, re-grade, or macadamize any highway in the city, when they should deem it necessary, and to levy and collect the cost by an assessment of an equal sum per foot on the properties abutting on the highway improved. The twelfth section authorized the construction of sewers whenever necessary, at the expense of the properties benefited, which were to be assessed by three discreet and disinterested freeholders, whom the councils were to appoint assessors for the purpose. On the 26th of May 1871, a supplement to the Act of 1864 was passed (Pamph. L. of 1871, 1236). By its terms the councils were empowered to cause bridges or culverts to be constructed over any ravine or stream, or over or under any railroad within the city of Pittsburgh, and the approaches thereto, at the crossing of any highway then existing or thereafter to be laid out; and to cause the cost and expense to be assessed upon and collected from the owners of properties benefited, in the same manner that the cost and expense of sewers were by law assessed and collected.

This legislation required that absolute equality should be worked out between the cost of each improvement and the assessment of the fund for its payment. Whatever the merits of any particular case, the councils were given power to find some owner or owners of property somewhere upon whom, by the application of some wrenching process, the expenditure could be charged. Large as the power was, and arbitrary and oppressive in its execution as it must sometimes have been, its general exercise has been supported by the decisions of this court. McMasters *v.* The Commonwealth, 3 Watts 292, and the cases that have followed in its track, have extended the long-settled principle that local taxation is justifiable for local purposes, so as to sustain legislation that imposes on property benefited by a local improvement, or its owner, a tax in proportion to the superadded value of the property caused by the improvement, of which this property has a peculiar advantage beyond that of

others not in like circumstances : Per AGNEW, J., in Washington Avenue, 19 P. F. Smith 352. There can be no objection to a rule that charges special liabilities in return for special benefits. Unimpeded and convenient access to places of business in crowded thoroughfares, and even to dwellings in the compactly-built portions of a city, is afforded often at a large expense, and is a peculiar privilege conferred on the individuals for whom it is provided. In a still more especial manner, an expenditure for a sewer is an appropriation for a local purpose. The properties it improves may be numbered, and its effect may be exactly measured. In ascertaining and apportioning its cost, there is, in the ordinary case, no hazard from caprice, prejudice or mistake. The general result of the authorities on this branch of the law is, that a statute providing for the fair and equal assessment of properties peculiarly benefited by a local improvement, in order to pay its cost, will be sustained as a legitimate and constitutional exercise of legislative power.

Are the circumstances of this case such as to bring it within the operation of the settled rules ? The Act of 1871 undertook to apply to the construction of all bridges in the highways of Pittsburgh the provisions relating to sewers of the 12th section of the Act of 1864. The bridge over Saw-mill Run was built at a cost of $11,764.70, and the expenses of the two views increased the amount to $12,249.43. This sum was assessed, by the last view, on a multitude of properties, situated on eleven different streets, alleys and avenues ; in what was called, in the report, the " Oberhelm Plan of Lots ;" in Shalersville ; and in what was called the " Acre Assessment." The lots were charged at different rates, ranging from ten cents per foot in Shalersville, to seventy-five cents per foot on Main street. Except in a part of Main street, where the amount of the charge was forty cents, the rates on all the lots in each of the streets were uniform, irrespective of their relative distances from the bridge. In the " Acre Assessment" Mrs. Denny was assessed for eighty acres at eight dollars per acre, and thirty-one other properties, containing quantities reaching from half an acre to thirty acres, were returned at the uniform rate of six dollars and sixty-one cents. In this schedule one body of ninety-one lots were returned at two dollars a lot ; two parcels of land containing together seven acres, at twenty dollars, and one parcel of nine acres at ten dollars per acre. It would seem impossible, in the very nature of the case, that anything like even approximate accuracy or equality could have been attained in such an assessment. A variety of cases can be conceived where persons to whom the bridge would be a peculiar advantage for exceptional reasons, might be entirely omitted in the report, and persons to whom and to whose property it could bring no earthly benefit, might be assessed. Unlike a sewer, and unlike a highway in front of a merchant's store or a tradesman's shop, a peculiar local advantage derived from the

bridge would have to be conjectured by the viewers, and the extent of that advantage would be the subject of a second guess. The uniform rates fixed for all varieties and classes of properties on the line of the same street, must have been necessarily unequal, and therefore essentially unjust. The construction of a street or a sewer improves all the lots along its line in the same way and to the same proportionate extent. The erection of a bridge increases facilities for travel which may materially and immediately improve the business of a baker, a butcher, the proprietor of a hotel, or the keeper of a livery stable, without affecting in any possible way either the business or the property of many classes of mechanics, laborers and men of business. The difficulties and embarrassments inherently involved in the application to such a subject of the statutory provisions regarding sewers and streets, would seem to be insuperable.

Main street is a public thoroughfare of the city of Pittsburgh. It was formerly the line of the Pittsburgh and Noblestown Plankroad Company, running through what was then the borough of Temperanceville. On the 6th of July 1872 the borough purchased from the company the portion of the road within the corporate boundaries, for the consideration of $2000. Saw-mill Run crosses Main street, as the thoroughfare was called after the purchase, within the borough limits, and when the street was graded and paved, the plank-road bridge was left to stand. Later in 1872, the borough of Temperanceville was consolidated with the city of Pittsburgh, and on the 23d of December, in that year, the city councils began proceedings for the erection of the new bridge, the assessment of the cost of which is the subject of this controversy. Can this be called a local improvement, especially benefiting particular individuals and for which they should be compelled to pay ? Sawmill Run crosses a public highway of the city. The bridge over it was built in the line of this highway, in which every inhabitant of Pittsburgh may have some interest, and every citizen of Allegheny county and of the Commonwealth is entitled to assert some right. In such an improvement, surely no citizen can have exclusively private right and he can scarcely have any definable private interest. The bridge was constructed to serve an apparent and essential public purpose, and to impose the cost of it on individuals selected out of the mass of the community on any conceivable rule that viewers could adopt, would be the placing of public burdens on private shoulders. Among the cases collected in Hammett *v.* Philadelphia, 15 P. F. Smith 146, was that of The Tide-water Company *v.* Coster, 3 C. E. Greene 518. In that case Chief Justice Beasley said that, " a legislative act authorizing the building of a public bridge and directing the expenses to be assessed on A., B., and C., such persons not being in any way peculiarly benefited by such a structure, would not be an act of taxation but a condem-

[In re Saw-mill Run Bridge.]

nation of so much of the money of the person designated to a public use." "It matters not," Mr. Justice SHARSWOOD said, in Hammett v. Philadelphia, "whether an assessment upon an individual or a class of individuals for a general and not for a mere local purpose, be regarded as an act of confiscation, a judicial sentence or rescript or a taking of private property for public use without compensation. In any aspect, it transcends the power of the legislature and is void." At the very utmost, in the case of an improvement whose public object and character are palpable, assessments of individual property to meet its costs would be justified only by affirmative and distinct proof appearing on the record of individual benefits actually conferred and of their nature, extent and value.

It is by no means clear that these proceedings were not fatally defective upon another ground. The Act of 1871 authorized the construction of bridges in the lines of the highways of Pittsburgh. Does this provision warrant the removal of any existing bridge, and the building of another, at private cost, at the option of the city councils? If so, how often may the change be made, and where shall the limit of the citizens' liability be fixed? The borough of Temperanceville paid the Plank-road Company two thousand dollars for their road and bridge out of the funds of the municipality. To these funds the taxes on the properties of these complainants presumably contributed. The old structure afforded a passage across the run, and the new one did no more. A strict construction is required of legislation that imposes unequal burdens, just as it is required of legislation that creates exceptional privileges and immunities. The exigencies of the case do not require a decision of the point, but it may well be that the re-construction of a bridge was not within the legislative intention when the Act of 1871 was passed.

A great variety of questions came up in the mass of materials of which the record consists. The view that has been taken of the rights of the parties saves all need for their discussion.

           The order of the Court of Quarter Sessions of the 26th of November 1875, confirming the report of the viewers, is reversed, and the report is set aside.