Decree affirmed and appeal dismissed at the costs of the appellant.

# Appeal of the Protestant Orphan Asylum of Pittsburgh and Allegheny et al.

1. The Act of 13th of May, 1871, providing that whenever the councils of the City of Pittsburgh desire to re-grade or re-pave any street, and the cost of the original grading or paving was paid by the property holders, the matter shall be referred to viewers appointed in pursuance of the act to inquire and report to councils whether the improvement is of local or general benefit, or partly local; and if they report that it is in whole or in part a local benefit, they shall designate the district to be benefited thereby, and the proportion to be paid by the district benefited, and further, to apportion the local assessments among the property of the district in proportion to the benefit supposed to be conferred by the improvement is unconstitutional, being in conconflict with Section 1, Article IX., of the Constitution.

2. When the adjacent property has paid the original cost of grading or paving a street in a city it has fully paid for all its local advantages, and it cannot thereafter be charged for maintenance and repairs.

Hammett *v*. Philadelphia, 15 P. F. S. 146, followed.

November 2d, 1885.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT. GREEN and CLARK, JJ.

APPEAL from the Court of Quarter Sessions of the Peace of *Allegheny county :* Of October and November Term, 1885, No. 104.

This was an appeal by the Protestant Orphan Asylum of Pittsburgh and Allegheny, Martha Watson, R. Miller, Jr., Joseph N. Patterson, Thomas H. Patterson, and James F. Hall, administrator of the estate of Robert Sterrett, deceased, from the decree of the court dismissing their exceptions to the report of viewers and confirming said report.

The following are the facts in the case :

In April, 1883, a petition of various citizens of the city of Pittsburgh was presented to councils asking the re-pavement of Tenth street, between Liberty and Penn Streets, one square, with Belgian block stone.    The petition recited the heavy travel upon this square, by reason of which it was always in bad condition, and a nuisance to the neighborhood, and asked the re-pavement as a matter of convenience to people in all parts of the city who use it, and of economy to the city.    This petition was not signed by the abutting property holders.

It was referred to the city board of viewers, who reported that the proposed improvement was partly of local and partly of general benefit; and that one half the cost should be paid by the city and one half by the properties abutting.    Assessments of the estimated cost were made in accordance with this report, upon the property of the appellants, being abutting property owners, and the report was approved by councils 10th September, 1883.

On the 20th of September, 1883, the petition of appellants, being all the abutting property owners, was presented to the Court of Quarter Sessions, representing that by an ordinance of the city of Pittsburgh, passed September 10th, 1883, the city engineer was authorized and directed to cause to be re-paved with Belgian block stone that part of Tenth Street, from Liberty Avenue to Penn Avenue, i. e., the roadway of said street in said square mentioned, and it was enacted and directed by the said ordinance, that the cost and expense of the said re-paving shall "be assessed and collected in accordance with the provisions of the Act of Assembly, entitled, 'An Act concerning streets and sewers in the city of Pittsburgh,' approved January 6th, 1864, and the several supplements thereto, and in the proportions designated by the report of the board of viewers of the street improvements, to wit, one half from the city of Pittsburgh and one half from the property abutting."

That the petitioners, who are property holders, will, unless the said ordinance is set aside and declared to be unlawful, each be assessed for a portion of the half of the cost of the said re-paving, directed to be assessed on the property abutting on the portion of Tenth Street proposed to be re-paved, and thus great injustice will be done your petitioners, and they will be compelled to pay money for which they are not legally liable.

And petitioners here specify the following causes of appeal, and of objections to the report of the said viewers and to the ordinance, viz.:

1. Because this re-paving is really a repair of the street of the city of Pittsburgh, heretofore improved and paved, and paid for on part of the abutting properties and the owners thereof, and thereby made a part of the public system of streets and thoroughfares of said city, which said city has become entirely responsible for as to the custody, care and repair of same, and the said city is bound to provide the cost and expenses of such care and repair from its treasury and by general taxation.

2. Because none of the owners of the property abutting on said part of Tenth Street petitioned for such re-paving as is now designed to be done.

3. Because the five properties reported by the city viewers to be liable to assessment for one half of costs, &c., of the proposed re-paving of said part of Tenth street, front of Penn and Liberty Avenues, and extended broadside along Tenth Street about 110 feet each, and extend back in depth from Tenth Street (real width) only about twenty feet.

4. Because said part of Tenth Street is used comparatively little by the owners of the four abutting properties, but almost exclusively as a general thoroughfare for the hauling of heavy freights to and from the railroads, freight boats, manufactories and business houses in all parts of the city and of the neighboring county.

5. Because the re-paving with Belgian block stone of the said part of Tenth Street, now contemplated, will result solely in a more permanent pavement to economize the general re-paving expenses of said city, and is not any local or special improvement of the five abutting properties sought to be assessed for one half of the costs and expenses thereof.

6. That the mode proposed to be adopted in assessing said costs and expenses is not according to law, and is unconstitutional.

Petitioners therefore pray that an order may be made requiring the city clerk of said city to certify and return said report of viewers and all proceedings (including said ordin-

ance) therein, and in relation thereto into court for review, as directed by the Act of Assembly in such case made and provided.

The court allowed the appeal prayed for, and directed a citation to the city clerk requiring him to certify and file in court said report of viewers and ordinance, and all papers relating thereto.

These were certified and filed in court as directed.

On October 26th a jury trial was demanded, and that an issue be certified into the Common Pleas. This was refused by the court below, a ruling which was sustained on *certiorari* to the Supreme Court, as a proper one at that stage of the proceedings.

After the proceedings were remitted to the lower court it was agreed in writing by the counsel for the city that the assessment on abutting property owners should be reduced one half, so that, in event of the proceedings being finally sustained, the property owners will be assessed one fourth the entire cost of the improvement; and also it was admitted that the cost of the original paving was paid by the property owners.

Thereafter, and upon argument, the court below modified the report as per above agreement, and then ordered that with this modification the proceedings are confirmed, the exceptions dismissed, and the record directed to be returned to the city. To this order finally overruling and dismissing all these exceptions and confirming the proceedings, the appellants took this appeal, assigning for error the dismissing appellants' exceptions and objections, and the confirming the proceedings.

These proceedings, subject to the proper legal effect of the prior incorporation and street legislation of the city of Pittsburgh and of the decisions of this court, are under the following sections of the Act of May 13th, 1871:

" Section 12. Whenever the councils of said city of Pittsburgh shall desire to re-grade or re-pave any street, lane or alley or parts thereof, either with the same or improved kind of paving, and the cost of the original grading or paving was paid by the property holders, it shall be the duty of said councils to refer the petition therefor to the viewers appointed in pursuance of this Act, who shall inquire and report to councils whether the improvement is of local or general benefit, or partly local; and if they shall report that it was in whole or in part local benefit, they shall designate the district to be benefited thereby, and the proportion to be paid by the district benefited.

" Section 13. When the viewers shall have reported to councils, they shall have power to provide by ordinance for the re-grading or re-paving of said streets, lane or alley, or

part thereof, and that the cost and expense thereof shall be assessed wholly or partly upon the district designated in accordance with said report; provided, that whenever an ordinance for the re-grading or re-paving of any street, lane or alley, or part thereof, shall have been passed by councils, an appeal may be taken within ten days thereafter in the same manner as from the assessment of viewers as hereinbefore provided; and all action under said ordinance shall be suspended until final order of the court thereon; and said court shall have power to direct such modifications of the action of councils as shall appear just and proper.

"Section 14. When any street, lane or alley, or part thereof, shall have been re-graded or re-paved under an ordinance directing a local assessment therefor, the proportion of the cost and expense thereof, which may be ordered to be paid by local assessment, shall be assessed by the viewers appointed under the provisions of this Act upon the property in the district designated, in proportion to the benefits to the said property respectively, in the same manner and subject to all the regulations relating to assessments for damages caused by change of grade of streets, so far as applicable; but no appeal shall be taken except as to the proper distribution of assessments upon property in the district designated."

*T. H. Baird Patterson* and *Thomas Patterson, Jr.*, for appellants.—The questions raised on this record are naturally divided into two heads: 1st. The constitutionality of the 12th, 13th and 14th Sections of the Act of May 13th, 1871, P. L., 840; 2d. The legality of the ordinance of councils upon which the proceedings in this case are based.

The question of constitutionality is raised by the sixth exception in the court below. We contend that the Act is unconstitutional, because,

*a.* These sections are in violation of Art. 9, Sec. 1, of the constitution, which provides that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." If the assessment in this case is a tax, and this would seem to be the view in which it is regarded by this court, does it not fall directly within this prohibition? On the former appearance of this case, when same was presented on the theory that the assessment was a taking under the right of eminent domain, within the provisions of Art. 16, Sec. 8, of the constitution, guaranteeing a trial by jury, the court below was sustained in refusing us a jury trial. This would seem to indicate that the assessment is to be regarded

as a tax. To the same effect is the case of the City of Erie
*v.* First Universalist Church, 105 Pa. St., 278.

*b.* The said sections of the Act of 1871 are in violation of
the repeatedly recognized principle of constitutional law that
the burdens of the community at large can not be laid upon a
few individuals. "Laws which cast the burden of the public
upon a few individuals, no matter what the pretence, or how
seeming their analogy to constitutional enactments, are in
their essence despotic and tyrannical, and it becomes the
judiciary to stand by the fundamental law in defence of those
general, great and essential principles of liberty and free
government, for the establishment and perpetuation of which
the Constitution itself was ordained": Washington Avenue
Appeal, 19 P. F. S., 364.

The proceeding here is in effect an attempt to assess upon
the property owners the cost of performing a municipal duty,
to wit, the repair of Tenth street. That the duty of repairing
streets is in the municipality can hardly be doubted: Ham-
mett *v.* Philadelphia, 15 P. F. S., 156; Washington Avenue
Appeal, 19 P. F. S., 364; In re Sawmill Run Bridge, 4 Norris,
169; Seely *v.* City of Pittsburgh, 1 Norris, 360.

That the duty to repair the streets and keep them in good
order is in the city, unless it be relieved by the circumstances
of a special contract is recognized in Passenger R. R. Co. *v.*
Birmingham, 1 P. F. S., 41; P. & B. Passenger Ry. Co. *v.*
Pittsburgh, 30 P. F. S., 72.

*c.* Again, the method proposed by the said sections of the
Act of 1871, and the proceedings thereunder, is to assess the
cost of an improvement upon the property owners before the
work is done or the materials furnished. Such legislation
seems to be excluded by the language of this court in re
Sawmill Run Bridge: "At the very utmost, in the case of an
improvement whose public object and character are palpable,
assessments of individual property to meet its costs would be
justified only by affirmative and distinct proof appearing on
the record of individual benefits actually conferred, and of
their nature, extent and value."

*W. C. Moreland* and *W. W. Thomson*, for appellees.—There
is no doubt that the assessment of the cost of local improve-
ments upon the properties benefited is done, as claimed by the
appellants, under the taxing power of the State, and is a
species of taxation, but we deny the conclusion they have
drawn from this, that being taxation it is in violation of Sec-
tion 1 of Article 9 of the constitution.

Prior to the adoption of the constitution of 1874 the power
of making such assessments had been so often recognized and

declared in the decisions of this court that it was considered as well established, and had become the usual manner in which the legislature provided for the payment of the costs of local improvements in the various cities and towns of this state.

It is said by Mr. Justice SHARSWOOD, in Hammett v. Philadelphia, 65 P. S. R. (15 P. F. S.) 150: "It may be considered as a point fully settled and at rest in this state, that the legislature has the constitutional right to confer upon municipal corporations the power of assessing the cost of local improvements upon the properties benefited. It is a species of taxation, not the taking of private property by virtue of eminent domain." "Local assessments can only be constitutional when imposed to pay for local improvements clearly conferring special benefits on the properties assessed, and to the extent of those benefits; they can not be so imposed when the improvement is either expressed, or appears to be for the general public benefit."

These principles are approved and followed by AGNEW. J., in Washington Avenue case, 69 P. S. R. (19 P. F. S.) 360, 361 and 364. Seely v. Pittsburgh, 82 P. S. R. (1 Norris) 364, 365 and 368; Craig v. Philadelphia, 89 P. S. R. (8 Norris) 270; the Sawmill Run Bridge case, 85 P. S. R. (4 Norris) 166 and 167, all affirm the same principle.

That local assessments for the payment of local improvements are valid and constitutional is also stated as settled law in Cooley on Constitutional Limitations, *505; 2 Dillon on Municipal Corporations, § 752, p. 742, and n.; Id., § 761, pp. 756, 757; Burroughs on Taxation, 460, 471.

But are the Acts providing for the assessment of the cost of local improvements upon the properties benefited thereby contrary to Section 1 of Article 9?

It has been held that the legislature has power to divide subjects of legislation into classes, and to legislate for such classes. To divide cities into classes: Wheeler v. Philadelphia, 27 P. F. S. (77 P. S. R.) 348, 349; Kilgore v. Magee, 4 Norris (85 P. S. R.), 411. They may classify the subjects of taxation: Kitty Roup's Case, 32 P. F. S., 216. An Act providing that in all cases where a street is graded and paved or a sewer built, the cost shall be assessed upon the properties benefited, creates classes of subjects of taxation.

Further, all the acts heretofore referred to authorizing assessments for local improvements in the city of Pittsburgh were passed prior to the adoption of the new Constitution and have never been repealed by the Legislature. "Sec. 1, article 9, is not immediately operative, but was intended by the convention to be mandatory upon the Legislature to enact

laws framed upon its special intent and to repeal all laws inconsistent therewith, leaving the Legislature, in the exercise of a sound discretion, to time the repeal after proper general laws have been passed. Any other interpretation would lead to most ruinous results:" Lehigh Iron Co. *v.* Lower Macungie Township, 31 P. F. Smith, 81 (Pa. St. R.,) 485. This opinion is quoted and affirmed in County of Allegheny *v.* Gibson, 9 Norris, 90 P. S. R., 409, where all the cases are collected and considered.

Can this court decide as a matter of fact, or law, that no re-pavement can be of any peculiar or especial benefit to any property in its neighborhood? It would be necessary to do this, to decide that this Act of May 13th, 1871, is unconstitutional, and that a case of re-pavement does not come within the principle that local assessments for the cost of local improvements may be made on the property benefited by them.

In other states the dictum in Hammett *v.* Philadelphia, on this question has not been followed. In 2 Dillon Mun. Corp., page 779, sec. 780, it is said: "Not only the power to tax, but the power to make local improvements at the expense of the property benefited is like all other legislative power of the municipality, a continuing one, unless there be something to indicate the contrary; and hence it is not exhausted by being once exercised. Therefore the power to compel the property owners to pave, ordinarily extends to compelling them to re-pave, when required by the municipal authorities:" Williams *v.* Detroit, 2 Mich., 560; McCormack *v.* Patchin, 53 Mo , 33, 14 Am. R., 440; Gurnee *v.* Chicago, 40 Ill., 165; Municipality *v.* Dunn, 10 La. An., 57; Mayor of Newark *v.* State. 13 Am. L. Reg., N. S., 441, 447. In the Acts of January 6th, 1864, and May 13th, 1871, there is no indication of an intention to limit the power of the councils to the laying of the first pavement. In the Act of 1864, the power is given to "pave and re-pave," and in that of 1871, to re-pave, and assess the cost on property benefited. The power is clearly given if the Legislature has authority to give it, and by the Act of 1871, the assessments are expressly limited to the property found by a proper tribunal to be actually benefited.

Mr. Justice GORDON delivered the opinion of the court, January 4th, 1886.

The Act of the 13th of May, 1871, was evidently devised for the purpose of avoiding the constitutional prohibition against unequal taxation and to render as far as possible ineffectual the blow struck at this kind of taxation in the case of Hammett *v.* Philadelphia, 15 P. F. S., 146. The twelfth section of this Act provides as follows: "Whenever the councils

of the said city of Pittsburgh shall desire to re-pave or re-grade any street, lane or alley, or parts thereof, either with the same or improved kind of paving, and the cost of the original grading or paving was paid by the property holders, it shall be the duty of the said councils to refer the petition therefor to the viewers appointed in pursuance of this Act, who shall inquire and report to councils whether the improvement is of local or general benefit, or partly local; and if they shall report that it was in whole or in part local benefit, they shall designate the district to be benefited thereby, and the proportion to be paid by the district benefited." Here we see that the viewers have the power to carve out arbitrarily a district from the general municipality that shall, in whole, or in part, bear the burthen of the proposed alteration or repair.

This involves a principle of taxation that we refused to acknowledge in the cases of the Washington Avenue 19 P. F. S., 364 and the Saw-mill Run Bridge 4 Nor., 169; it is utterly vicious, and can be sustained by no authority. ·

That any part of a municipality should be arbitrarily set apart by a board of viewers, and specially taxed for an improvement which, like Tenth street, belongs to the whole of it, is a proposition involving so gross a perversion of constitutional right that it will not bear discussion. The 14th section then provides, that this "local assessment" shall be apportioned among the property of the district designated, in proportion to the benefits supposed to be conferred by the proposed improvement upon the said property. Here we have another step in the direction of arbitrary and unconstitutional taxation. The viewers, without any fixed rule, but according to their own notions as to what the property owner ought to pay, are to apportion the tax as they may think proper. Thus, we have first, the uncertainty as to what the district shall be, and, second, of the amount of the tax, and both are made to depend upon the judgment of a board of viewers. The Constitution provides that, "all taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Now, the class of property dealt with by the Act of 1871 is real estate, but the taxation is not uniform within the city of Pittsburgh, the taxing authority, but local and special; some property being burthened with the whole cost of the repairs necessary for this public highway, and the rest wholly exempted.

Moreover, as we have already pointed out, there is no legal rule or uniformity either for the creation of the district to be taxed, or for the assessment of the property within said district; but these matters, so momentous to the tax-payer, are committed to the judgment of an irresponsible commission.

specially created for the purpose. Than this, the foot-front rule is altogether better, at least in the way of uniformity; under it the district is limited to the street proposed to be improved, and the tax is assessed equally upon every foot of land adjacent to such street. We have thus certainty and equality established by a fixed rule of law, both of which are wanting in the Act under consideration. We admit that the Legislature has the right to confer upon municipalities the power to assess the cost of local improvements upon the properties benefited thereby. We can readily understand why the cost of constructing and maintaining a sewer, which is designed for the drainage of a particular street or locality, and which is essentially necessary for the health, comfort and convenience of the inhabitants dwelling along such street, or in such locality, should be assessed upon the property of the district thus benefited, for the improvement as well as the use is local, and the benefit to the public is but secondary. So with a sidewalk, without which a house in a town or city cannot be said to be finished; and though the public has the right of way over it, the greater benefit results to the property itself. But when we come to a street or other highway, which is primarily designed, not for the use or welfare of the inhabitants of any particular locality, but for the public at large, the case is very different. It then becomes utterly unjust to charge the cost of what is purely a public improvement, designed exclusively for the general welfare, upon the property of a few individuals, who, however they may be incidentally benefited, have neither been consulted, nor their profit nor convenience regarded. Under such circumstances we cannot agree to proceed a single step beyond what is warranted by the case of Hammett *v.* Philadelphia. There is some show of reason why the original cost of grading and paving a street in a populous municipality should be charged upon the adjacent property, for it receives from the improvement some benefit of a local character, but when this is done it has fully paid for all its local advantages, and it cannot thereafter be charged for maintenance and repairs. Much has been said in the attempt to weaken the force of the point ruled in Hammett *v.* Philadelphia; as that Broad street was intended for a great public drive, and that thus was given to it a character not attaching to ordinary city highways. But all this is sound without substance. The question, and the only question, before the court was the constitutionality of the Act imposing the cost of repaving Broad street on the adjacent property, and this matter is thus disposed of by Mr. Justice SHARSWOOD: " But when a street is once opened and paved, thus assimilated with the rest of the city and made part of it, all the particular benefits to

[Neeb v. Hope.]

the locality derived from the improvements have been received and enjoyed. Repairing streets is as much a part of the ordinary duties of the municipality, for the general good, as cleaning, watching and lighting. It would lead to monstrous injustice and inequality should such general expenses be provided for by local assessments." This disposes effectually of the case in hand, for it leaves no room for the imposing of any part of the expenses of repairing on the lot-owner. Indeed, the principle involved is precisely the same whether the whole, one half or one quarter of such expenses be imposed on the abutting property, for if the lesser amount may thus be charged so may the greater, and so the Act of 1871 contemplates; for whether the one or the other shall be so charged is left to depend upon the discretion of the board of viewers.

The decree of the court below is now reversed and set aside, together with all previous proceedings which in any manner charge the petitioners with any part of the costs of re-paving Tenth street. Further ordered, that the appellees pay the costs of this appeal.