## Manheim Township Supervisors *v.* Workman, Appellant.

Argued May 22, 1944.  Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Charles E. Workman,* in propria persona, appellant.

*S. V. Hosterman,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, June 30, 1944:

We allowed an appeal from the Superior Court in this case (154 Pa. Superior Ct. 146, 35 A. 2d 747) in order that we might review its decision sustaining the constitutionality of Section 386, Clause 2, of the General Township Act of July 14, 1917, P. L. 840, as amended by the Act of April 27, 1927, P. L. 464.

This clause as amended provided that in townships of the second class the supervisors should have power "On the petition of the owners of a majority of the lineal feet frontage along any street, highway, or portion thereof within the township, to enter into contract, and shall contract, with electric, gas, or other lighting companies to light and illuminate said streets and highways and other public places in said villages with electric light, gas light, or other illuminant. The township supervisors shall levy, for the maintenance of said lights, an annual tax upon all the property, including factories and places of business, abutting upon the said streets and highways in the district benefited thereby, based upon the assessment for county purposes. Such taxes shall be collected in the same manner as other taxes. No such tax shall be levied against any farm land."

Charles E. Workman, appellant, is the owner of a lot of ground upon which is erected a two and a half story dwelling situate on the Lititz Pike in Manheim Township, Lancaster County. Manheim Township is a township of the second class. In pursuance of a petition of the owners of a majority of the lineal feet frontage for a distance of 11,950 feet along Lititz Pike the supervisors, on May 5, 1933,* imposed for that year a street-light tax of three and a half mills upon that "district", which included appellant's lot. On December 30, 1936, a light-tax claim of $11.03 was filed against his property, upon which there was subsequently issued a scire facias. A petition by appellant to strike off the lien proved unsuccessful and as the result of a jury trial a judgment for $16.99 was obtained by plaintiffs.

Article IX, Section 1, of the Constitution provides that "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Obviously the tax under consideration was not uniform within the territorial limits of the township for it was imposed only upon the properties within the district specified. The justification for its validity is sought by plaintiffs in the well known principle that the requirement of uniformity does not apply to assessments for the cost of local improvements: *Hammett v. Philadelphia,* 65 Pa. 146, 150, 151; *Washington Avenue,* 69 Pa. 352, 360, 361; *Huidekoper v. City of Meadville,* 83 Pa. 156; *In re Saw-mill Run Bridge,* 85 Pa. 163, 166, 167; *Michener v. City of Philadelphia,* 118 Pa. 535, 12 A. 174; *Grafius' Run,* 31 Pa. Superior Ct. 638, 640,

---

* The Act of July 14, 1917, P. L. 840, as amended, was repealed, so far as townships of the second class were concerned, by the Second Class Township Law of May 1, 1933, P. L. 103, which, however, in Section 702, clause 2, contained a provision identical with that of Section 386, clause 2 of the repealed act except that it omitted the words *"and shall contract"*. The Act of 1933 did not become effective until July 1, 1933, and therefore the tax here complained of was not levied under its provisions.

641; *City of Philadelphia v. United States Housing Corporation of Pennsylvania,* 82 Pa. Superior Ct. 343, 347. While ordinarily a tax cannot be imposed solely upon persons residing or properties situated in a particular portion of the territory of the taxing authority, it is proper to make municipal assessments for local improvements; such assessments, although stated in *Hammett v. Philadelphia,* supra, to be a "species of taxation", are not really taxes but claims laid against properties specially benefited, being in the nature of an exaction from them of compensation for the presumed increase in their values resulting from the improvement. Special assessments have been levied in connection with the grading, curbing and paving of streets, the building of sewers and culverts and the laying of water-pipes; where the question has arisen, it has also generally been held that the construction of the poles, wires, conduits, lamps and other fixtures of an electric street-lighting system constitutes a local improvement for the cost of the erection of which special assessments may be levied under proper statutory authorization: *Ewart v. Village of Western Springs,* 180 Ill. 318, 322, 323, 54 N. E. 478, 479, 480; *Ankeny v. City of Spokane,* 92 Wash. 549, 558, 159 P. 806, 809; *Swetland Building Co. v. Children's Home,* 127 Ore. 188, 194, 270 P. 927, 929; *School District No. 1 v. City of Helena,* 87 Mont. 300, 309, 287 P. 164, 167; *Roberts v. City of Los Angeles,* 7 Cal. 2d 477, 490-492, 61 P. 2d 323, 328, 329.

The weakness, however, of the contention that the street-light tax levied upon appellant's property may be sustained as a special assessment for a local improvement lies in the fact that it ignores the fundamental qualification established in Pennsylvania — whatever may be the law in other jurisdictions—that the exemption of such an assessment from the application of the uniformity provision of the Constitution relates only to an initial construction or installation of a permanent improvement and not to its continuing maintenance or

operation; an assessment for special benefits may be imposed only once as to any given improvement. This limitation stems from the leading case of *Hammett v. Philadelphia*, 65 Pa. 146, where Mr. Justice SHARSWOOD said (p. 156): "But when a street is once opened and paved, thus assimilated with the rest of the city and made a part of it, all the particular benefits to the locality derived from the improvements have been received and enjoyed. Repairing streets is as much a part of the ordinary duties of the municipality—for the general good—as cleaning, watching and *lighting*. It would lead to monstrous injustice and inequality should such general expenses be provided for by local assessments." This and numerous cases which followed (for example, *Appeal of the Protestant Orphan Asylum of Pittsburgh and Allegheny*, 111 Pa. 135, 144, 3 A. 217, 219, 220; *Erie's Appeal*, 305 Pa. 134, 137, 157 A. 476, 477) have firmly established the doctrine that the maintenance of the streets of a municipality is for the benefit of the entire community and not merely of the abutting property owners. The furnishing of electric energy to a lighting system cannot therefore be made the basis of an annual or recurring tax levied on properties alleged to be specially benefited thereby.

There is but one theory upon which a street-light tax can be justified if not imposed generally upon the same class of subjects within the township, namely, as a reasonable charge for a product furnished, or additional service rendered, to particular persons or groups of persons within the township. The furnishing of light by a municipality is a function performed by it in its proprietary or quasi-private capacity, just as when it furnishes gas or water, or collects ashes, removes garbage, or operates and maintains sewers. Charges made in connection with such operations are based upon contract rather than taxation because those who consume the product or receive the service act in so doing voluntarily, either as individuals or as a neighborhood or

"district" group, and thereby impliedly agree to pay the price of the product furnished or service rendered. Such charges are "simply charges for a commodity sold as any others sell commodities": *Shirk v. Lancaster City,* 313 Pa. 158, 173, 169 A. 557, 563; *Hamilton's Appeal,* 340 Pa. 17, 21, 16 A. 2d 32, 34. But they must be reasonably proportional to the value of the product or service received, for, if imposed without due regard to that requirement, "the charge provided for by the ordinance is, in legal effect, undoubtedly a tax, and the obligation to pay it could be created only by the [township's] exercise of its general taxing power. . . . As a tax it is palpably violative of our constitutional provision requiring uniformity of taxation": *Hamilton's Appeal,* 340 Pa. 17, 24, 16 A. 2d 32, 35, 36.

The street-light tax imposed in the present instance was not measured by the service rendered,. for it was based "upon the assessment for county purposes". There is no necessary or even likely connection between a proper charge for the light furnished and the assessed valuation of the properties abutting on the highway. This was the very method of charging which was declared invalid, as regards sewer rentals, in *Hamilton's Appeal,* supra, and in *Philadelphia's Petition,* 343 Pa. 47, 21 A. 2d 876, where it was held to constitute a tax rather than a service charge, and, as a tax, to lack the constitutional requirement of uniformity. When a municipality supplies light to abutting property owners it acts the same as a private corporation, and certainly a private corporation furnishing light could not charge for it according to the assessed valuations of the properties to which it was furnished. The accepted method employed in levying special assessments for street improvements such as paving and sewer installations is based upon the foot front rule, not upon the valuations of the abutting properties, and, since it is impossible in the case of street lighting to apportion to each property a charge measured by any exact quantity or degree

of user, the nearest approach to a reasonable and just allocation is to adopt that rule and to impose a charge of a stipulated amount per foot of highway frontage. While ordinarily the foot front rule is not adapted to rural districts (*Seely v. City of Pittsburgh*, 82 Pa. 360) it would be an entirely permissible, and indeed the only valid, method to employ here, for according to the act under which this tax was imposed the lighting was authorized only in "villages", by which was presumably meant built-up sections, and farm lands were expressly and properly exempted from the tax. It may be fairly asserted that properties (other than farms) abutting on a highway receive the light from a street-lighting system in proportion to their respective frontages.

To summarize, therefore,—the street-light tax levied upon appellant's property was not a general tax, it was not a justifiable special assessment, and it was not a valid charge for service rendered because not measured by the method essential to the validity of such a charge. It therefore constitutes a violation of Article IX, Section 1, of the Constitution. But it is unconstitutional also in another respect. According to the amendatory Act of April 27, 1927, P. L. 464, it was *obligatory* on the township supervisors to contract for the lighting when petitioned thereto by the owners of a majority of the lineal feet frontage along any portion of a street or highway within the township, and also obligatory on them thereupon to levy a tax to maintain the lights. The action of the supervisors in furnishing the lighting and imposing the tax was therefore determined wholly by the will of an unspecified number of abutting property owners, who, by their vote, could thus subject non-assenting neighbors to the burden of the tax; indeed the Superior Court said (p. 149, A. p. 749) that "The supervisors were made merely the representatives of the abutting property owners in entering into such contract." The effects of such a system are here illustrated by the fact that of the 27,350 feet of Lititz Pike which are in Man-

heim Township the first 1,400 feet immediately north of the City of Lancaster were not taxed at all; the next 11,950 feet, which included appellant's property, were taxed three and a half mills; the next 6,520 feet were taxed two and a half mills; the remaining 7,480 feet were not taxed; on another road in the township there was a light tax for that same year of two and a half mills, and on certain other streets one of two mills. These variations resulted from different groups of property owners petitioning, or failing to petition, the supervisors to install lights in front of their properties. If (as under the present act of May 1, 1933, P. L. 103) the supervisors were merely empowered, instead of obliged, to install the lights and impose the tax, then, even though they acted in response to a petition by individual property owners, there could be no ground for objection, but where, as here, the tax is the automatic and inevitable result of action taken by a mere group of residents, the statutory provision establishing such a system is unconstitutional as delegating to private citizens the authority to establish the boundaries of a taxing district and to compel the imposition of a tax on the property owners therein. Moreover, as due process of law requires that one's property should not be taken under the guise of taxation unless the taxing power is exercised by government and not by private individuals, the provision in question is, in the respect indicated, violative of the Fourteenth Amendment of the Federal Constitution: *Browning v. Hooper,* 269 U. S. 396; *Washington ex rel. Seattle Title Trust Co. v. Roberge,* 278 U. S. 116.

The judgment of the Superior Court affirming the judgment of the Court of Common Pleas of Lancaster County is reversed and judgment is here entered for defendant.