**[J-56-2024] [MO: Brobson, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| THE BOROUGH OF WEST CHESTER, | : | No. 9 MAP 2023 |
| | : | |
| Appellant | : | Appeal from the Commonwealth |
| | : | Court decision dated January 4, |
| | : | 2023 at No. 260 MD 2018. |
| | : | |
| v. | : | |
| | : | ARGUED:  September 11, 2024 |
| | : | |
| PENNSYLVANIA STATE SYSTEM OF | : | |
| HIGHER EDUCATION AND WEST | : | |
| CHESTER UNIVERSITY OF | : | |
| PENNSYLVANIA OF THE STATE SYSTEM | : | |
| OF HIGHER EDUCATION, | : | |
| | : | |
| Appellees | : | |

## CONCURRING AND DISSENTING OPINION

**JUSTICE WECHT**                                              **DECIDED:  April 30, 2026**

The Borough of West Chester imposed a stormwater charge to contend with the cost of managing the flow of stormwater within the municipality.  The Pennsylvania State System of Higher Education and West Chester University[1] maintain that this charge is a tax, from which they are immune, rather than a fee, which they are required to pay.  I agree with the Majority only to the extent that it holds that the Commonwealth Court properly allocated the burden of proof in this matter to the Borough when it ruled upon the parties' cross-motions for summary judgment.[2]

---

[1]      I refer to the Pennsylvania State System of Higher Education and West Chester University collectively herein as "the University."

[2]      Maj. Op. at 10, n.7.

On the question of whether the stormwater charge is a tax or a fee, I dissent from the Majority's conclusion that it is a tax from which the University enjoys immunity. In this regard, I join the bulk of Justice McCaffery's Concurring and Dissenting Opinion. I agree with Justice McCaffery that the stormwater charge constitutes a fee, which the University is required to pay, rather than a tax. As Justice McCaffery observes, the University benefits from the stormwater management system, which alleviates the University's burden to manage its own stormwater.[3] Our case law concerning other kinds of waste management services suggests that, similar to trash removal, ash collection, and the operation of a sewer system, a stormwater management system is a service for which a municipal entity may assess a fee.[4]

The Majority's analysis ends at its conclusion that the Borough of West Chester is acting in its public capacity, and the stormwater charge is, therefore, a tax.[5] I agree with Justice McCaffery's analysis, which would require a determination of whether the stormwater charge is proportional to the benefit the University receives from its use of the stormwater management system. Determining whether a charge is reasonably proportional[6] to the value of the service rendered involves two considerations. The first is

---

[3]     Concurring and Dissenting Op. at 13.

[4]     *Supervisors of Manheim Twp. v. Workman*, 38 A.2d 273, 276 (Pa. 1944); *Sw. Delaware Cnty. Mun. Auth. v. Aston Twp.*, 198 A.2d 867, 874 (Pa. 1964) (requiring school district to pay "sewer rentals"). The intermediate courts have reached similar conclusions with respect to sewer and trash collection services. *See GSP Mgmt. Co. v. Duncansville Mun. Auth.*, 126 A.3d 369, 376-77 (Pa. Cmwlth. 2015) (concluding that because the amount billed was unreasonable to the service rendered, otherwise permissible sewer fees were unauthorized taxes); *M&D Properties, Inc. v. Borough of Port Vue*, 893 A.2d 858, 862 (Pa. Cmwlth. 2006) (finding trash collection fees to be reasonable).

[5]     Maj. Op. at 32.

[6]     *Manheim Twp.*, 38 A.2d at 276.

the basis upon which the charge is assessed. The second is the array of costs that properly may be assessed upon that basis.

In this case, impervious surface area provides a reasonable, approximate basis—if not the only practicable one—for allocating the burden of funding the Borough's system. This Court has acknowledged that precise determination of the extent of one's use of a service is sometimes impossible or impractical.[7] In such circumstances, we have allowed the use of an associated metric as a proxy. For instance, in *In re City of Philadelphia*,[8] a sewer charge was based, in part, upon a property owner's water use. To that extent, we deemed the fee's rationale to be unobjectionable, "since the amount of water which flows into a building is apt to be roughly proportional to what flows out as sewage."[9]

As for the second consideration—the costs that users of the service may be expected to shoulder—a fee may not be based upon the costs of constructing a local benefit, as this would constitute a special assessment in disguise.[10] Rather, all costs "reasonably related" to the maintenance and operation of the stormwater system fairly can be imposed on large scale users of that system.[11] The effects of stormwater discharge from any given property are diffuse. Efforts to manage one property's

---

[7] *Id*. (explaining that it would be impossible to determine the amount of streetlight that a property uses, and proposing street frontage as a permissible basis for assessing a fee).

[8] 21 A.2d 876 (Pa. 1941).

[9] *Id*. at 878. The charge also was based upon the assessed value of the subject property. That basis, we concluded, bore no relation to the service rendered. As a result, we ultimately held that the charge was a tax. *Id*.

[10] *See City of Philadelphia*, 21 A.2d at 879 (a charge must be based on extent of use, rather than the cost of furnishing the facilities); *see also City of Philadelphia v. Cumberland County Board of Assessment Appeals*, 81 A.3d 24, 50 (Pa. 2013) ("An arm, agency, subdivision, or municipality of the Commonwealth enjoys sovereign immunity from local real estate taxation.").

[11] *See* Concurring and Dissenting Op. at 12.

stormwater necessarily may occur far from that property. The summary judgment record here suggests that stormwater management, viewed broadly, might involve efforts to prevent runoff by improving and/or restoring aspects of the natural environment, as well as efforts to direct runoff flow and to minimize pollution.[12] The stormwater charge here may fairly account for the cost of such efforts.

Although I agree with Justice McCaffery that the stormwater charge is a fee, I do not join Justice McCaffery to the extent that he relies upon the Environmental Rights Amendment[13] as support for his analysis or for the decision by municipalities to implement stormwater management systems.[14] Whether (and how) the ERA requires political subdivisions to fund stormwater management systems is irrelevant to the question of whether the charge constitutes a tax or a fee. The reach of the ERA with respect to stormwater management is a distinct question, and one that is beyond the scope of this

---

[12] *See Borough of West Chester v. PASSHE*, 291 A.3d 455, 460-61 (Pa. Cmwlth. 2023).

[13] The Amendment ("the ERA") provides:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, § 27.

In general, the ERA preserves certain environmental rights for the citizens of the Commonwealth, and imposes responsibilities on the Commonwealth as a trustee. *See Pa. Env't Def. Found. v. Commonwealth*, 161 A.3d 911, 930-33 (Pa. 2017). Pursuant to the ERA, the Commonwealth has a "duty to prohibit the degradation, diminution, and depletion of our public natural resources, whether these harms might result from direct state action or from the actions of private parties," and "must act affirmatively via legislative action to protect the environment." *Id*. at 933 (*citing Robinson Twp. v. Commonwealth*, 83 A.3d 901, 958 (Pa. 2013)).

[14] *See* Concurring and Dissenting Op. at 14.

appeal.  As the ERA's interface with stormwater management is not a part of this case, I would not make it so now.  Opining upon the impact of the ERA on today's case could prove problematic in future cases, and could appear to constitutionalize a non-constitutional dispute.  Sufficient unto the day is the lawsuit thereof.

Nor do I join Justice McCaffery's invocation of public policy as support for concluding that the stormwater charge is a fee.[15]  In my view, a public policy approach has no place in the analysis of whether the stormwater charge is a fee or a tax.

---

[15]    *See* Concurring Dissenting Op. at 13.  The public policy argument was advanced in an *amicus curiae* brief filed by the Pennsylvania Municipal Authorities Association.