IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Borough of West Chester,      :
             Petitioner      :
     :
     v.      :
     :
Pennsylvania State System of Higher      :
Education and West Chester University      :
of Pennsylvania of the State System of      :
Higher Education,      :      No. 260 M.D. 2018
             Respondents      :      Argued: September 14, 2022


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON           FILED: January 4, 2023


The Borough of West Chester (Borough) filed with this Court, in our original jurisdiction, a petition for declaratory judgment against the Pennsylvania State System of Higher Education (PASSHE)[1] and West Chester University of Pennsylvania of PASSHE (University) (jointly, Respondents) seeking to establish

---

[1] Pursuant to Section 2002-A.(a) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 – 27-2702, PASSHE is a body corporate and politic constituting a public corporation and an instrumentality of the Commonwealth of Pennsylvania. 24 P.S. § 20-2002-A.(a); Decl. J. Pet. at 2, ¶ 6.

that the Borough's charge related to stormwater management (Stormwater Charge) is not a tax from which Respondents are immune, but a fee for service which Respondents are obligated to pay. Decl. J. Pet. at 21-22, ¶¶ 103-10. Currently before this Court are cross-motions for summary relief.[2] For the reasons that follow, we grant judgment in favor of Respondents, as the Stormwater Charge constitutes a local tax which Respondents are immune from paying as a matter of law.

## I. Background

The Borough owns and operates a small municipal separate storm sewer system (MS4). *Id.* at 7, ¶¶ 31-32.[3] In or about 2016, the Borough Council

---

[2] The Borough is a home rule municipality organized and existing under and pursuant to the laws of the Commonwealth of Pennsylvania including, without limitation, the Pennsylvania Home Rule Charter and Optional Plans Law, 53 Pa.C.S. §§ 2901–3171. Decl. J. Pet. at 2, ¶ 2.

[3] Federal regulations provide the following relevant definitions:

> (16) *Small municipal separate storm sewer system* means all separate storm sewers that are:
>
>> (i) Owned or operated by the United States, a State, city, town, borough, county, parish, district, association, or other public body (created by or pursuant to State law) having jurisdiction over disposal of sewage, industrial wastes, storm water, or other wastes, including special districts under State law such as a sewer district, flood control district or drainage district, or similar entity, or an Indian tribe or an authorized Indian tribal organization, or a designated and approved management agency under section 208 of the CWA that discharges to waters of the United States.
>
>> (ii) Not defined as "large" or "medium" municipal separate storm sewer systems. . . . .
>
>> . . . .
>
> (17) *Small MS4* means a small municipal separate storm sewer system.

40 C.F.R. § 122.26(b)(16), (17).

2

enacted various provisions of the West Chester Code (Code) providing for the Stormwater Charge.[4] Decl. J. Pet. at 4, ¶ 15. The Borough adopted this charge, as set forth in Section 94A-6(A.) of the Code, W. CHESTER CODE § 94A-6(A.) (2022), as the mechanism by which it would raise revenue to further construct, operate and maintain its stormwater management facilities. *Id.* at 15-16, ¶¶ 72-73; *see also* Section 94A-5 of the Code (defining "Stream Protection Fee"). The Code provides, in relevant part:

> For the use of, benefit by and the services rendered by the stormwater management system, including its operation, maintenance, repair, replacement and improvement of said system and all other expenses, a stream protection fee [*i.e.*, the Stormwater Charge] as described, defined, and calculated herein is hereby imposed upon each and every developed property[5] within the Borough that is connected with, uses, is serviced by or is benefitted by the Borough's [S]tormwater [] [S]ystem, either directly or indirectly, and upon the owners of such developed property as set forth herein.

Section 94A-6(A.) of the Code, W. CHESTER CODE § 94A-6(A.) (2022). The Code further provides:

> A. All sums collected from the payment of stream protection fees shall be deposited into the West Chester Borough Stormwater Management Fund.

---

[4] These provisions are contained in Chapter 94A of the Borough's Code, titled "Stream Protection Fee," and are referred to in the Borough's pleadings as the Stream Protection Ordinance. A digital copy of the Borough's Code is available at https://ecode360.com/31470563 (last visited Dec. 23, 2022).

[5] The Code defines the term "developed" as describing "[p]roperty where manmade changes have been made which add impervious surfaces to the property, which changes may include, but are not limited to, buildings or other structures . . . , mining, dredging, filling, grading, paving, excavation or drilling operations, or the storage of equipment or materials." Section 94A-5 of the Borough's Code, W. CHESTER CODE § 94A-5 (2022).

3

B. The Stormwater Management Fund shall be used by the Borough for:

(1) Implementation and management of a program to manage stormwater within the Borough.

(2) Constructing, operating, and maintaining the Borough's Stormwater [] System.

(3) Debt service for financing stormwater capital projects.

(4) Payment for other project costs and performance of other functions or duties authorized by law in conjunction with the maintenance, operation, repair, construction, design, planning and management of stormwater facilities, programs and operations.

Section 94A-9(A.), (B.) of the Code, W. CHESTER CODE § 94A-9(A.), (B.) (2022).

In September 2016, the Borough Council adopted Resolution No. 11-2016 imposing the Stormwater Charge upon the owners of all developed properties within the jurisdictional limits of the Borough that are benefitted by the Borough's stormwater management system[6] (Stormwater System) and the public health, safety and welfare enhancements that are afforded by the Borough's Stormwater System. Decl. J. Pet. at 4, ¶ 17. The amount of the Stormwater Charge for which the owner of a developed property is responsible is dependent upon the amount of impervious

---

[6] The Code defines the Borough's stormwater management system (Stormwater System) as

[t]he system of collection and conveyance, including underground pipes, conduits, mains, inlets, culverts, catch basins, gutters, ditches, manholes, outfalls, dams, flood control structures, natural areas, structural and non-structural stormwater best management practices, channels, detention ponds, public streets, curbs, drains and all devices, appliances, appurtenances and facilities appurtenant thereto used for collecting, conducting, pumping, conveying, detaining, discharging and/or treating stormwater.

Section 94A-5 of the Borough's Code, W. CHESTER CODE § 94A-5 (2022).

4

surface on the property. *Id.* at 17, ¶ 78. All revenue generated by the Stormwater Charge is deposited into the Borough's Stormwater Management Fund. *Id.* The Borough uses revenue generated by the Stormwater Charge only for the purposes set forth in the Code, which include funding pollution remediation measures and complying with state and federal regulatory requirements. *Id.* at 19.

A portion of the University's campus, known as North Campus, lies in the south-central portion of the Borough. Decl. J. Pet. at 3, ¶ 11. PASSHE, in the name of the Commonwealth of Pennsylvania, is the title owner in fee simple of the properties which form a part of the North Campus, and the University is title owner in fee simple of another portion of that property. *Id.* at 3-4, ¶ 13. The Borough asserts that all of the Commonwealth titled and University titled properties, including North Campus, are "developed" for purposes of the Code and that these properties are connected with, use, and are served or benefitted by the Borough's Stormwater System. Decl. J. Pet. at 17, ¶¶ 76-77.

The Borough avers that the impervious area of the portion of the North Campus that lies in the Borough covers 32 acres, constituting nearly 8% of the total impervious area within the Borough. *Id.* at 11-12, ¶¶ 51-52. The Borough further avers that stormwater which flows from the impervious areas of the North Campus situated in the Borough either enters and flows through its Stormwater System or flows directly into a nearby watercourse. *Id.* at 12, ¶ 53. The Borough contends "there is a direct relationship between the amount of impervious surface within a given watershed and the health and quality of the watercourse (and its tributaries) within that watershed, as well as public health, safety, and welfare concerns related to flooding and other stormwater-related issues." *Id.* at 11, ¶ 50.

5

The Borough sent Respondents Stormwater Charge invoices in 2017, 2018, and 2019, all of which Respondents refused to pay. Decl. J. Pet. at 19-21, ¶¶ 92-102; Respondents' Motion for Summary Judgment (Respondents' MSJ) at 16, ¶¶ 47-48. The Borough does not dispute that both PASSHE and the University are immune from local taxation; however, the Borough argues that the Stormwater Charge constitutes a fee for service rather than a tax, such that Respondents are obligated to pay it. Decl. J. Pet. at 22, ¶¶ 106-07.[7]

Respondents filed preliminary objections demurring to the Borough's declaratory judgment petition on the basis that the Stormwater Charge is not a fee for service, but rather a tax from which they are immune as Commonwealth entities. Preliminary Objection to the Borough's Declaratory Judgment [Petition] (Preliminary Objection) at 4-5, ¶¶ 15-25. Respondents also asserted that even if the Stormwater Charge is considered an assessment rather than a general tax because it is limited to stormwater infrastructure projects, it is still a form of tax subject to the Commonwealth's tax immunity. *Id.* at 6, ¶ 24. Respondents additionally contended that the Stormwater Charge is not reasonably proportional to the value of any product or service provided to the Commonwealth in a quasi-private capacity, such as the provision of natural gas or garbage collection. *Id.* at 6-7, ¶ 26 (citing *Supervisors of Manheim Twp., Lancaster Cnty. v. Workman*, 38 A.2d 273, 276 (Pa. 1944)).

On July 15, 2019, this Court issued a memorandum opinion overruling Respondents' preliminary objections. *Borough of W. Chester v. Pa. State Sys. of Higher Educ.* (Pa. Cmwlth., No. 260 M.D. 2018, filed July 15, 2019), slip op. at 11-12. We reasoned that

---

[7] The Borough stated in its declaratory judgment petition that, "[a]s a threshold matter, [it] does not dispute the legal accuracy of PASSHE's counsel's statement that PASSHE and [the University] are immune to local taxation . . . ." Decl. J. Pet. at 22, ¶ 106 (internal quotation marks omitted).

> questions remain[ed], *inter alia*, as to: whether the Borough's Stormwater System provide[d] a discrete benefit to Respondents, as opposed to generally aiding the environment and the public at large; whether the value of the Stormwater System to Respondents [was] reasonably proportional to the amount of the Stormwater Charge; and, apart from general operation, maintenance and repair of the Borough's Stormwater System, how exactly [] the Borough utilize[d] the funds generated by the Stormwater Charge.

*Id.*, slip op. at 11. We posited that "[f]urther factual development and the resolution of pending questions may enable the Borough to establish that the Stormwater Charge constitutes a fee for service that is reasonably proportional to the value of the benefit conferred to Respondents in a quasi-private capacity." *Id.*

Respondents countered that the Borough's Stormwater System confers a general environmental benefit on all property owners and citizens within and around the Borough. Respondents' Answer at 3, ¶ 19. Thus, Respondents maintained the Stormwater Charge constitutes a tax which they are immune from paying. *Id.* at 17 & 22, ¶¶ 1 & 32-33. Respondents averred that the University maintains its own separate MS4 permit and stormwater system to collect and manage stormwater runoff and, consequently, does not rely upon the Borough's MS4 for these purposes; rather, Respondents insisted that measures implemented on the University's campus pursuant to its own MS4 and at its own expense in fact decrease the amount of stormwater runoff managed by the Borough's Stormwater System. Respondents' Answer at 9, ¶ 53; Respondents' New Matter at 21, ¶¶ 27-28. Respondents also averred that the University has borne the cost of implementing numerous measures for the prevention of stormwater runoff, such as adding trees, green roofs, rainwater gardens, and pervious paver surfaces to various portions of campus; Respondents

7

maintained that the University's MS4 permit likewise generally benefits residents both on campus and in the Borough. Respondents' New Matter at 21-22, ¶¶ 28-31.

Further, Respondents contended that the Borough developed the Pollution Reduction Plan, which is funded by the Stormwater Charge, specifically to address sediment in Brandywine Creek, Blackhorse Run, Plum Run,[8] and Taylor Run; to install infiltration facilities—including rain gardens,[9] vegetated curb extensions, bioswales,[10] infiltration trenches, and brick pavers—at Veterans Park, Marshall Square Park, and Brandywine Street; to conduct streambank restoration in the Blackhorse Run, Plum Run, and Taylor Run watersheds; to fund street sweeping and tree planting throughout the Borough; to address phosphorus buildup in Goose Creek; to install infiltration facilities-including rain gardens, vegetated curb extensions, bioswales, and infiltration trenches at John Green Memorial Park, Fugett Park, and Greenview Alley; to fund street sweeping and tree planting throughout the Borough; to install Jellyfish Filters at two discharge points on East Nields Street; and to manually clean inlet boxes throughout the Borough. *Id* at 17-20, ¶¶ 2-22 (citing MS4 Pollution Reduction Plan at 8 & 16-17; MS4 Total Maximum Daily

---

[8] Plum Run is a small waterway which flows to the west and southwest of North Campus. Respondents' MSJ at 7, ¶¶ 15-16 (citing Deposition of Michael A. Perrone (Perrone Dep.) at 31). Plum Run also flows beneath north Campus in an underground pipe owned by the Borough, where it is fed via both University- and Borough-owned inlets and pipes. *Id.* at 7, ¶¶ 16 & 18 (citing Perrone Dep. at 31-33 & 12-24; Deposition of Gary Bixby (Bixby Dep.) at 98-99 & 107-08). Bixby testified that he served as associate vice president of facilities for the University. *See* Bixby Dep. at 15.

[9] A rain garden is a collection of trees, bushes, and plants that can survive in a dry season but also absorb large amounts of water quickly in a storm. Respondents' MSJ at 13 n.11.

[10] Bioswales are storm water runoff conveyance systems that provide an alternative to storm sewers.

Load (TMDL) Plan at 12, 19 & 20-21).[11]  Respondents contended that none of the aforementioned projects will benefit University campus property.  *Id.*

The Borough filed an answer denying Respondents' "characterizations" of the Borough's MS4 Pollution Reduction Plan and TMDL Plan.  Answer to New Matter at 3-5, ¶¶ 9-13 & 16-19.  The Borough admitted only that the streambank restoration projects referenced by Respondents will be located outside University property.  *Id.* at 5, ¶ 19.  The Borough admitted that the University manages its own MS4, but asserted that the University also benefits from the Borough's MS4.  *Id.* at 7, ¶ 27.

## II. Issues

Respondents contend that they are entitled to judgment as a matter of law because the Stormwater Charge constitutes a tax from which they are immune, rather than a fee for service.  Respondents' MSJ at 16, ¶¶ 50-51.  Respondents maintain that the Stormwater Charge constitutes a tax because the projects it funds are designed to return a "general benefit" and promote "the welfare of all."  *Id.* at 16, ¶ 52 (quoting *In re Broad St. in Sewickley Borough*, 30 A. 1007 (Pa. 1895)).  According to Respondents, the Borough's contention that the University derives a discrete benefit in return for payment of the Stormwater Charge is undermined by the stated finding of the Borough's Council that maintaining a stormwater system is fundamental to the "public health, safety, and general welfare" of Borough residents.  Respondents' Br. in Support of MSJ at 13 (quoting Section 94A-2(D.) of the Code, W. CHESTER CODE § 94A-2(D.) (2022)).  Moreover, Respondents maintain that even

---

[11] A copy of the Borough's MS4 Pollution Reduction Plan is attached to Respondents' Answer with New Matter at Exhibit H, and a copy of the Borough's MS4 TMDL Plan is attached as Exhibit I.

if this Court were to deem the Stormwater Charge a special assessment on the basis that it funds certain infrastructure projects, such assessments nevertheless constitute a form of tax under Pennsylvania law. *Id.* at 16-17, ¶ 53 (citing *Sw. Del. Cnty. Mun. Auth. v. Aston Twp.*, 198 A.2d 867, 870 (Pa. 1964)).

Respondents also insist that even if deemed a fee, rather than a tax, the Stormwater Charge is not reasonable, as it is not proportional to the cost of maintaining the Stormwater System. Respondents' MSJ at 17, ¶ 55. Respondents further maintain that the purpose of municipal stormwater projects is to benefit not only adjacent properties, but the community as a whole. Respondents' Br. in Support of MSJ at 24-25 (citing *Supervisors of Manheim Twp.*, 38 A.2d at 276 (explaining that "the maintenance of the streets of a municipality are for the benefit of the entire community and not merely of the abutting property owners")). Respondents theorize that all property owners receive the same general benefits from the projects funded by the Stormwater Charge, such as decreased flooding, minimized erosion to public waterways, and cleaner water. *Id.* at 27 (citing Deposition of Michael A. Perrone (Perrone Dep.) at 67-70).[12] Respondents also note that prior to the enactment of the Stream Protection Ordinance, the Stormwater System was funded by the Borough's general fund. *See id.* at 41 (citing Perrone Dep. at 45-46). Thus, Respondents request that this Court conclude the Stormwater Charge is a tax. Respondents' MSJ at 18.

The Borough admits that the University has its own MS4. Borough's Answer in Opp. to Respondents' MSJ at 10, ¶ 27. However, the Borough contends that the Stormwater System simultaneously accords both specific and general

---

[12] Perrone is currently the Borough Manager. *See* Perrone Dep. at 18. From 1986 to 2017, as Director of the Borough's Building, Housing Codes and Enforcement Department, he worked with Borough engineers on land development applications, storm water traffic and other aspects of residential and nonresidential development. *Id.* at 3, 15 & 19-20.

10

benefits, maintaining that such benefits are not mutually exclusive. *Id.* at 17-18, ¶ 54. The Borough maintains that the Stormwater Charge constitutes a fee, because amounts imposed may be reduced through the appeals process, revenue is deposited only in the Stormwater Management Fund, and it is imposed only on owners of developed land. *Id.* at 13.

The Borough also asserts that if required to provide for disposal of their own stormwater, Respondents would incur initial capital costs in excess of $4,200,000, and that annualizing these costs along with annual maintenance costs yields a total annual cost of $178,500, whereas Respondents' actual annual Stormwater Charge bill is roughly $132,000. Borough's Br. in Support of ASR at 33 (citing *id.*, Exhibit C, NTM Engineering, Inc. Report (NTM Report) at 11). Thus, the Borough contends that its Stormwater Charge is reasonably proportional to the level of benefit afforded Respondents from connection to the Borough's Stormwater System. *See id.* at 2, 12, 20 & 33 (citing NTM Report).

### III. Discussion

"In ruling on an application for summary relief, the court must view the evidence of record in the light most favorable to the nonmoving party and enter judgment only if there are no genuine issues as to any material facts and the right to judgment is clear as a matter of law." *Buehl v. Horn*, 761 A.2d 1247, 1248-49 (Pa. Cmwlth. 2000), *aff'd*, 797 A.2d 897 (Pa. 2002) (citation omitted); *see also* Pa.R.A.P. 1532(b). "A fact is considered material if its resolution could affect the outcome of the case under the governing law." *Hosp. & Healthsystem Ass'n of Pa. v. Commonwealth*, 77 A.3d 587, 602 (Pa. 2013). "Where the parties have filed cross-motions for summary relief, the Court must determine whether it is clear from the

11

undisputed facts that one of the parties has established a clear right to the relief requested."[13]  *Iseley v. Beard*, 841 A.2d 168, 169 n.1 (Pa. Cmwlth. 2004) (citing *Gelnett v. Dep't of Transp.*, 670 A.2d 217 (Pa. Cmwlth. 1996)).

The present dispute turns on whether the Borough's Stormwater Charge constitutes a tax or a fee for service.  This Court has explained the distinction between a tax and a fee for service as follows:

> The classic tax is "imposed by a legislature upon many, or all citizens[.  It] . . . raises money, [is] contributed to a general fund, and [is] spent for the benefit of the entire community."  *San Juan Cellular Tel*[.]  *Co. v. Pub*[.]  *Serv*[.]  *Comm*['*]*n of Puerto Rico*, 967 F.2d 683 (1st Cir. 1992).  A tax is an "enforced contribution to provide for the support of government."  *United States v. LaFranca*, 282 U.S. 568 . . . (1931).  Where a charge is imposed by a state or municipality not in its capacity as a sovereign but rather under a voluntary, contractual relationship, it has been held not to be a tax.  *United States v. City of Columbia, M*[*o.*]*,* 914 F.2d 151, 156 (8th Cir.1990).  A "fee" is paid to a public agency for bestowing a benefit which is not shared by the general members of the community and is paid by choice. *City of Vanceburg, K*[*y.*]  *v.  Fed*[.]  *Energy  Regul*[.]  *Comm*['*]*n*, 571 F.2d 630, 644 (D.C. Cir.1977) . . . .  The Supreme Court distinguished taxes and fees in *National Cable Television Association v. United States*, 415 U.S. 336, 340, . . . (1974):
>
>> Taxation is a legislative function, and [a legislature] . . . may act arbitrarily and disregard benefits bestowed by [a g]overnment on a taxpayer and go solely on ability to pay. . . . A fee, however, is incident to a voluntary

---

[13] The Borough asserts that Respondents bear the burden of proving that the Stream Protection Ordinance is invalid.  *See* Borough's Reply Br. at 7-8 (citing *Johnston v. Twp. of Plumcreek*, 859 A.2d 7 (Pa. Cmwlth. 2004)).  However, Respondents do not seek to invalidate the Stream Protection Ordinance.  *See* Respondents' MSJ at 18.  Thus, we agree with Respondents that the Borough has the burden of proving Respondents' property is not immune from taxation. *See* Respondents' Br. in Opp. to Borough's ASR at 3 (citing *Norwegian Twp.*, 74 A.3d at 1131).

12

> act, *e.g.*, a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station.

*City of Philadelphia v. Pa. Pub. Util. Comm'n*, 676 A.2d 1298, 1307-08 (Pa. Cmwlth. 1996).

In addition, a charge is a tax rather than a fee for service if it is not reasonably proportional to the value or benefit received in return for its payment. *See Supervisors of Manheim Twp.*, 38 A.2d at 276 (holding that municipal charges "based upon contract rather than taxation . . . must be reasonably proportional to the value of the product or service received," and that charges "imposed without due regard to that requirement . . . [are], in legal effect, undoubtedly a tax," such that "the obligation to pay it could be created only by the [locality's] exercise of its general taxing power"); *In re City of Philadelphia*, 21 A.2d 876, 879 (Pa. 1941) (invalidating as an impermissible tax the city's imposition of a sewer rental charge based on the value of the property connected to the sewer system, reasoning that "[p]rimarily it [was] clear that the charge [was] based not upon extent of uses but the cost of furnishing the facilities"); *In re Petition of City of Philadelphia*, 16 A.2d 32, 35 (Pa. 1940) (holding that a municipal sewer system charge was "in legal effect, undoubtedly a tax," such that "the obligation to pay it could be created only by the [c]ity's exercise of its general taxing power," where the charge was "imposed without any regard whatever to the extent or value of the use made of the sewer facilities, or whether any use [was] made").

Here, the findings of the Borough Council published in the Code declare that "[a] comprehensive program of stormwater management is fundamental to the public health, safety, and general welfare of the residents of the Borough." Section 94A-2(D.) of the Code, W. CHESTER CODE § 94A-2(D.) (2022). The

13

Borough maintains that the Stormwater Charge constitutes a fee for service as opposed to a tax generally benefitting the public at large, because revenue generated by the charge funds projects providing specific, discrete benefits to owners of developed property. *See* Borough's ASR at 11-12, ¶ 40 & 18-19. However, Perrone testified on behalf of the Borough that owners of both developed and undeveloped properties in the Borough receive the same general benefits from projects funded by the Stormwater Charge. *See* Perrone Dep. at 75-78. Perrone further testified that managing stormwater provides "a general benefit to the [c]ommunity" by, for instance, preventing damage to public infrastructure. *See* Perrone Dep. at 60 & 70. The Borough acknowledges that Respondents' own MS4 "equally benefit[s] property owners and citizens on campus and in the greater community." Borough's ASR at 18, ¶ 73 (quoting Respondents' Answer with New Matter at 4, ¶ 19).

The Borough reasons, however, that the alleged specific and general benefits imparted by the Stormwater System are not mutually exclusive. *See* Borough's Answer in Opp. to Respondents' MSJ at 17-18, ¶ 54. Assuming, *arguendo*, that this is true, the Borough nevertheless fails to point to any evidence that Respondents receive discrete benefits through payment of the Stormwater Charge. As observed by Respondents, the NTM Report does not contain evidence of any distinct benefits accorded Respondents, but rather, merely projects the expenses the University would allegedly bear to manage stormwater runoff in the absence of the Stormwater System. *See* NTM Report at 11.

Notably, the Borough admits "that neither [the] Borough nor Respondents maintains [sic] a precise calculation of the aggregate volume of stormwater runoff which flows from North Campus into the [Stormwater System]," despite "den[ying] that Respondents do not maintain any such calculation."

14

Borough's Answer in Opp. to Respondents' MSJ at 8, ¶ 21 (citing Borough's Br. in Opp. to Respondents' MSJ, Exhibit B). Although the Borough argues there is a "direct relationship" between the amount of impervious surface area and the extent of stormwater related issues for any given watershed, the Borough nevertheless concedes that there is no means of measuring the amount of stormwater runoff that flows from North Campus into the Stormwater System. *See id.*; Decl. J. Pet. at 11, ¶ 50. Thus, no direct measure of Respondents' purported use of the Stormwater System exists.

We also agree with Respondents' assertion that the impervious surface area of a property does not correlate to the level of benefit accorded the owner of that property. *See* Respondents' Br. in Support of MSJ at 27. In *DeKalb County, Georgia v. United States*, 108 Fed. Cl. 681 (Fed. Cl. 2013), the United States Court of Federal Claims held that a county ordinance imposing a stormwater charge similarly calculated according to the impervious surface area of developed properties constituted a tax, rather than a fee for service, which the federal government was immune from paying. *See* 108 Fed. Cl. at 686 & 710. The Court explained:

> The purposes of the stormwater ordinance, and of the stormwater system—*i.e.*, flood prevention and the abatement of water pollution—are benefits that are enjoyed by the general public. For that reason, the charge is more properly viewed as a tax than as a fee. *See San Juan Cellular* [*Tel. Co. v. Pub. Serv. Comm'n*, 967 F.2d 683, 685 (1st Cir. 1992)] (noting that the revenue from a tax "is spent for the benefit of the entire community"). Those benefits are public; they are not individualized services provided to particular customers.
>
> The presence of a stormwater management system, and the imposition of charges to fund that system, create reciprocal benefits and burdens for nearly all owners of developed property within the unincorporated areas of [the c]ounty. While each property owner is burdened by

15

payment of the charge, and enjoys no special benefit by virtue of the connection of its own property to that system, the property owner does derive a benefit from the fact that stormwater runoff from other properties is collected and diverted by the system. That benefit, however, is one that is shared with nearly every other member of the community. In short, flood control is a public benefit, and charges to pay for that benefit are typically viewed as taxes. *See, e.g., United States v. City of Huntington, W.V[a]*., 999 F.2d 71, 73 (4th Cir.1993) (explaining that because flood control and fire prevention are both "core government services," assessments to pay for those services are taxes).[14]

. . . .

The stormwater system is a local infrastructure improvement that provides benefits—*i.e.*, drainage, flood protection, and water pollution abatement—not only to the owners of developed property who pay stormwater utility charges, but also to the owners of undeveloped property, who do not pay the charge, and to other members of the general public who may not own any property in the county at all. The Supreme Court has noted that "[a]ssessments upon property for local improvements are involuntary exactions, and in that respect stand on the same footing with ordinary taxes." *Hagar v. Reclamation Dist. No. 108*, 111 U.S. 701, 707 . . . (1884).

. . .

While user fees are generally based on the quantum of services that are provided, the assessments in this case are not necessarily based on the benefits provided to each owner of developed property. First, the stormwater charges in this case are based not on the benefits derived by the payor, but [on] the anticipated burden that its property imposes on the stormwater system. However, the burden imposed on the system by the runoff from the property, and the benefits conferred upon that property by

---

[14] *United States v. City of Huntington, W.Va.*, 999 F.2d 71 (4th Cir. 1993) did not involve a stormwater management charge, but rather a disputed municipal service fee subsidizing infrastructure improvements and flood and fire protection. *See City of Huntington*, 999 F.2d at 72.

16

the system are not the same thing. There may be properties, for example, that impose significant burdens on the stormwater system while deriving no substantial benefit from that system (*e.g.*, a property with extensive impervious coverage that is located on the top of a hill). Similarly, there may be properties that have little impact on the stormwater system that receive substantial benefits from that system (*e.g.*, a small home on a large, otherwise undeveloped lot that is located downhill from extensive development). Second, even if the benefits conferred on specific properties and the burdens those properties impose on the system were treated as if they were the same, the amount of the charge does not depend upon the burden actually imposed on the system by a particular property. Regardless of how much rain falls on a property, and how much of that rain actually leaves the property and flows into the system, the charge remains the same. *See Cincinnati v. United States*, 39 Fed. Cl. 271, 276 (1997) . . . .

*Dekalb*, 108 Fed. Cl. at 701-03.

We find the reasoning of *DeKalb* persuasive. The Stormwater Charge provides "benefits that are enjoyed by the general public," such as decreased flooding, erosion and pollution, as opposed to "individualized services provided to particular customers." *Id.* at 701; *see also City of Philadelphia*, 676 A.2d at 1308. Further, as it is calculated based on a lot's impervious surface area, the Stormwater Charge is "based not on the benefits derived by the payor, but by the anticipated burden that its property imposes on the [S]tormwater [S]ystem." *Dekalb*, 108 Fed. Cl. at 703.

Moreover, although the Borough identifies an appeals process through which owners of developed properties may apply for credits against Stormwater Charge assessments under certain circumstances, the Borough nevertheless fails to establish that it enters into "voluntary, contractual relationship[s]" with property owners subject to Stormwater Charge assessments or that such property owners pay

17

the charge "by choice." *City of Philadelphia*, 676 A.2d at 1307-08. Thus, the Stormwater Charge is not a fee. *See id.*

The remaining question is whether the Stormwater Charge constitutes a tax or an assessment. Our Supreme Court has explained:

> Taxes proper, or general taxes . . . proceed upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; that for those means it has the right to compel all citizens and property within its limits to contribute; and that for such contribution it renders no return of special benefit to any property, but only secures to the citizen that general benefit which results from protection to his person and property, and the promotion of those various schemes which have for their object the welfare of all. . . . On the other hand, special assessments or special taxes proceed upon the theory that when a local improvement enhances the value of neighboring property, that property should pay for the improvement.

*In re Broad St. in Sewickley Borough*, 30 A. 1007, 1008 (Pa. 1895) (quotation marks omitted). For instance,

> [s]pecial assessments have been levied in connection with the grading, curbing and paving of streets, the building of sewers and culverts and the laying of water-pipes; where the question has arisen, it has also generally been held that the construction of the poles, wires, conduits, lamps and other fixtures of an electric street-lighting system constitutes a local improvement for the cost of the erection of which special assessments may be levied under proper statutory authorization.

*Supervisors of Manheim Twp.*, 38 A.2d at 275 (emphasis added); *see also Sw. Delaware Cnty. Mun. Auth. v. Aston Twp.*, 198 A.2d 867, 870 (Pa. 1964) (stating that "[a]n assessment pays for a public, though a local, improvement").

18

Here, the Stormwater Charge does not constitute a special assessment subsidizing a particular project of limited duration, such as constructing culverts and pipes. *See id.*; *Supervisors of Manheim Twp.*, 38 A.2d at 275 (stating that "an assessment for special benefits may be imposed only once as to any given improvement"); *see also* Section 94A-2(B.) of the Code (stating that "much of [the Stormwater System] was constructed over 100 years ago"). Rather, the charge subsidizes an ongoing series of evolving tasks and projects. *See* Section 94A-6(A.) of the Code, W. CHESTER CODE § 94A-6(A.) (2022) (imposing the Stormwater Charge for the "operation, maintenance, repair, replacement and improvement" of the Stormwater System); *see also Supervisors of Manheim Twp.*, 38 A.2d at 275 (explaining that "[r]epairing streets is as much a part of the ordinary duties of the municipality—for the general good—as cleaning, watching and lighting. It would lead to monstrous injustice and inequality should such general expenses be provided for by local assessments."). Further, the Stormwater Charge constitutes a general tax, as opposed to a special assessment, because the work funded thereby does not benefit individual properties, but rather, yields a common benefit shared by residents of the Borough generally. *See In re Broad St. in Sewickley Borough*, 30 A. at 1008.

As noted above, the Borough concedes, as it must, that Respondents are immune from taxation. "It is well settled that property owned by the Commonwealth and its agencies is beyond the taxing power of a political subdivision. Thus, absent an explicit statutory grant of authority, property owned by the Commonwealth is immune from taxation." *Delaware Cnty. Solid Waste Auth. v. Berks Cnty. Bd. of Assessment Appeals*, 626 A.2d 528, 530-31 (Pa. 1993); *see also Indiana Univ. of Pa. v. Jefferson Cnty. Bd. of Assessment Appeals*, 243 A.3d 745, 749 (Pa. Cmwlth. 2020) (holding that a "local taxing body may tax real property of the Commonwealth only

where it has express statutory authorization to do so"). Pennsylvania courts "strictly construe statutes purporting to permit taxation of Commonwealth property, and such a grant may not be found by implication." *Delaware Cnty. Solid Waste Auth.*, 626 A.2d at 531. "Property owned by the Commonwealth and its agencies and instrumentalities is presumed to be immune, with the burden on the local taxing body to demonstrate taxability." *City of Philadelphia v. Cumberland Cnty. Bd. of Assessment Appeals*, 81 A.3d 24, 50 (Pa. 2013) (citations and footnote omitted). Tax immunity extends to every "arm, agency, subdivision, or municipality of the Commonwealth." *Id.*

Because the Stormwater Charge constitutes a tax, Respondents are immune from payment.[15] Accordingly, because no genuine issue of material fact remains and Respondents are entitled to judgment as a matter of law, we grant judgment in their favor. *See Buehl*, 761 A.2d at 1248-49.[16]

_____
CHRISTINE FIZZANO CANNON, Judge

Judge Dumas did not participate in the decision of this case.

---

[15] Even if deemed an assessment, rather than a general tax, Respondents would still be immune from the obligation to pay any amount assessed pursuant to the Stormwater Charge, because assessments are a form of tax. *Sw. Delaware Cty. Mun. Auth.*, 198 A.2d at 870 (stating that "statutes imposing assessments for local improvements are enacted in the exercise of the taxing power of the Legislature"). The Borough does not dispute that Respondents are immune from payment of local taxes. *See supra* note 8.

[16] Respondents also ask this Court to strike or disregard the expert report of the Borough's expert, Dr. Hank Fishkind, because it improperly offers legal opinions. *Id.* at 39-40. This Court has not considered Dr. Fishkind's report in the disposition of this matter.

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Borough of West Chester,    :
            Petitioner    :
                          :
         v.             :
                          :
Pennsylvania State System of Higher  :
Education and West Chester University  :
of Pennsylvania of the State System of  :
Higher Education,      :   No. 260 M.D. 2018
            Respondents  :

## O R D E R

AND NOW, this 4th day of January, 2023, the motion for summary judgment filed by the Pennsylvania State System of Higher Education and West Chester University of Pennsylvania is GRANTED. The cross-application for summary relief filed by the Borough of West Chester (Borough) is DENIED.

_____
CHRISTINE FIZZANO CANNON, Judge